IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON


SAMUEL MCGREW,                          :
                                                        Case No. 3:07-cv-373
                        Plaintiff,

                                                        District Judge Walter Herbert Rice
                                                        Chief Magistrate Judge Michael R. Merz
        -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                        Defendant.          :


## REPORT AND RECOMMENDATIONS


        Plaintiff brought this action pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1381(c)(3)

as it incorporates §405(g), for judicial review of the final decision of Defendant Commissioner of

Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits.

The case is now before the Court for decision after briefing by the parties directed to the record as

a whole.

        Judicial review of the Commissioner's decision is limited in scope by the statute

which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether

the record as a whole contains substantial evidence to support the Commissioner's decision. The

Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v.*

*Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

To qualify for supplemental security benefits (SSI), a claimant must file an

2

application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (1990). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the

3

Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed applications for SSI and SSD in January 2003, alleging disability from October 16, 1999, due to a compression fracture in his thoracic spine. (Tr. (Tr. 58-60, 492-94, 104). Plaintiff's applications were denied initially and on reconsideration. (Tr. 38-41; 43-45; 497-500; 502-04). A hearing was held before Administrative Law Judge James Knapp, (Tr. 523-75), who determined that Plaintiff is not disabled. (Tr. 17-30). The Appeals Counsel denied Plaintiff's request for review, (Tr. 6-9), and Judge Knapp's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Knapp found that Plaintiff has severe thoracic fracture residuals with related cervical strain and dysthymia, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 29, findings 3, 4). Judge Knapp also found that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.,* findings 6, 8. Judge Knapp then used section 202.21 of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 30, findings 12, 13). Judge Knapp concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. *Id.*

Plaintiff sustained a back work-related injury in 1999. See Tr. 357. Subsequently, Plaintiff received treatment from a chiropractor for the period January through March, 2001. (Tr. 160-80). Plaintiff's chiropractor referred him to Dr. Stratton of the Pain Evaluation and Management Center of Ohio ("Pain Center"). *Id.*

Plaintiff received treatment at the Pain Center during the period April 17, 2001,

through at least February 16, 2005. (Tr. 202-333; 439-91). At the time of his initial evaluation of Plaintiff, Dr. Stratton reported that Plaintiff had tenderness on palpation of the muscles of the neck, shoulder, and mid-back as well as the bilateral facet joints of the cervical/thoracic spine, that his range of motion was normal but slow and deliberate with some pain, and that his motor strength was normal. *Id.* Dr. Stratton also noted that Plaintiff's muscle volume, reflexes, and sensation were normal. *Id.* A subsequent EMG revealed evidence of carpal tunnel syndrome on the left and a diffuse neuropathic process. *Id.* Plaintiff was treated with medications and physical therapy. *Id.* A December, 2001, MRI of Plaintiff's thoracic spine revealed a 20% compression fracture at the upper end plate of T8. *Id.*

Plaintiff was evaluated at the ProWork Center in February, 2002. (Tr. 181-94). It was noted that during the evaluation, Plaintiff's affect was flat, his face lacked expression, he sat almost exclusively throughout the evaluation, sat for up to 75 minutes without standing or breaking, and he denied offers for breaks although he took one on each of the two-day evaluation. *Id.* It was also noted that Plaintiff's self-reported physical capacities were not even in the sedentary range, and it was recommended that he pursue medical treatment and mental health counseling. *Id.*

Examining physician Dr. Gamm reported on March 8, 2002, that Plaintiff limited the evaluation throughout the thoracic segment due to his hesitancy to have increased pain with maneuvers, that evaluation of his neck revealed complaints of midline cervical pain and paracervical discomfort much more marked on the left side, that he exhibited midline thoracic and paraspinal thoracic discomfort, that there were no spasms or trigger points, and that his ranges of motion were restricted. (Tr. 195-201). Dr. Gamm also reported that Plaintiff had symmetric grip strength, no demonstrable paresthesias, and symmetric but diminished cervical reflexes. *Id.* Dr. Gamm opined

5

that Plaintiff had reached maximum medical improvement, that he could lift up to 5 pounds continuously and up to 10 pounds occasionally, could sit, stand, and walk for up to an hour at a time, and that he should preferentially have a sedentary job. *Id.*

Plaintiff continued to receive treatment from Dr. Stratton and his associates at the Pain Center. (Tr. 202-333; 439-91). On April 10, 2002, Dr. Stratton reported that in an 8-hour day, Plaintiff was able to stand/walk for 1-4 hours, sit for 3.5-4 hours, that he could occasionally lift up to 10 pounds, and that he could not participate in a training program due to his need for further evaluation. *Id.*

Plaintiff underwent a series of facet blocks in September, 2002, and he reported that the blocks helped his pain and his functional capacity increased. *Id.* In late 2004, Dr. Stratton raised a concern about Plaintiff's use of marijuana and Plaintiff agreed to stop using it. *Id.* However, in February, 2005, Dr. Stratton terminated his treatment relationship with Plaintiff due to Plaintiff's "failure to come in for at least 3 pill counts". *Id.* At that time, Dr. Stratton also noted that Plaintiff had failed to keep several appointments with Pain Center psychologist Dr. Heitkemper. *Id.*

Examining psychologist Dr. Flexman reported on October 8, 2003, that Plaintiff was alert and oriented, had a good attention span, a good ability to concentrate, fair judgment, that obsessive thinking concerning somatic problems was judged to be out of proportion with reality, and that somatization was present. (Tr. 334-37). Dr. Flexman also reported that Plaintiff's diagnoses were depression NOS and pain disorder associated with both psychological factors and general medical condition and he assigned Plaintiff a GAF of 60. *Id.* Dr. Flexman opined that Plaintiff's ability to understand, remember, and carry out simple, short instructions was slightly impaired, his ability to make judgments for simple work-related decisions was slightly impaired, his ability to

6

attend and concentrate was slightly impaired, and his ability to tolerate work pressures in the work setting was moderately impaired. *Id.*

Examining psychiatrist Dr. Moon noted on April 16, 2004, that Plaintiff reported that since his work-related injury, his depression and anxiety had increased and that he has been on psychiatric-related medications. (Tr. 357-69). Dr. Moon also noted that Plaintiff last drank when he was 23 years old, that he smokes marijuana about two times a month, that he graduated from high school, and that he had become isolative. *Id.* Dr. Moon reported that Plaintiff was obese, had adequate grooming, was cooperative, depressed and anxious, his recent and remote memory was intact, and that his delayed memory was impaired. *Id.* Dr. Moon also reported that Plaintiff's diagnoses were dysthymic disorder and panic disorder with agoraphobia and he assigned Plaintiff a GAF of 49. *Id.* Dr. Moon opined that Plaintiff should be seen by a psychiatrist to review his medications and that he be involved in individual psychotherapy. *Id.* Dr. Moon also opined that Plaintiff's estimated return-to-work date was October 1, 2004, that he had not yet received comprehensive psychiatric treatment, and that he was not a candidate for rehabilitative services because he was not yet stable. *Id.*

Examining psychologist Dr. Madrigal reported on July 9, 2004, that Plaintiff was alert and oriented, expressed himself in a coherent manner, and that his affective expression was mostly depressed. (Tr. 370-73). Dr. Madrigal also reported that Plaintiff's MMPI results were valid, that the results of the evaluation supported the presence of a depressive disorder and a panic disorder, that the depressive disorder was best described as dysthymia, that he should undergo psychotherapy and continue taking anti-depressants, and that his conditions were work-prohibitive. *Id.* Dr. Madrigal opined that Plaintiff's diagnoses were dysthymic disorder and panic disorder with

7

agoraphobia and he assigned Plaintiff a GAF of 60. *Id.*

Plaintiff saw Dr. Moon on September 20, 2004, and at that time Dr. Moon reported that Plaintiff was obese, was cooperative but became argumentative when discussing the use of medications, and that there was no evidence of motor agitation or retardation. (Tr. 405-09). Dr. Moon also reported that Plaintiff's mood was depressed, he appeared sad and irritable, his thought processes were coherent, relevant, and goal directed, he was oriented, and that his recent, remote, and delayed memory was intact. *Id.* Dr. Moon also reported that Plaintiff did not appear to be open to treatment, that his diagnoses were dysthymic disorder and panic disorder without agoraphobia, and he assigned Plaintiff a GAF of 55. *Id.* Dr. Moon noted that he recommended that Plaintiff begin taking Celexa but that Plaintiff refused because he had taken antidepressants in the past and did not like the way he felt when taking them, that Plaintiff wanted to have his dose of Xanax increased because he had been taking it for 10 years and felt it was the only thing that helped him, that he (Dr. Moon) advised Plaintiff he would not increase his Xanax, and that Plaintiff refused treatment with Dr. Moon stating he would find another psychiatrist. *Id.*

Plaintiff consulted with psychologist Dr. Heitkemper on September 29, 2004, at which time Dr. Heitkemper reported that Plaintiff was alert and oriented, had a depressed mood, exhibited no overt signs of anxiety, that the results of the Beck Depression Inventory placed him in the severe range of depression, and that the results of the Beck Anxiety Inventory placed him in the severe range of anxiety. (Tr. 432-38). Dr. Heitkemper identified Plaintiff's diagnoses as dysthymic disorder and panic disorder and he recommended a treatment plan including medications. *Id.*

On March 5, 2005, Dr. Heitkemper reported that he first evaluated Plaintiff on September 29, 2004, that at that time he appeared depressed, there were no overt signs of anxiety,

that he had briefly started treatment with Dr. Moon but did not agree with his treatment plan, and that the result of his Beck depression inventory indicated he was in the severe range of depression. (Tr. 410-21). Dr. Heitkemper also reported that he subsequently treated Plaintiff on 7 occasions, there was a period when Plaintiff did not come in for treatment but that was reported by Plaintiff to be the result of weather or transportation-related problems, and that Plaintiff continued to be depressed and anxious. *Id.* Dr. Heitkemper noted that Plaintiff was taking Klonopin but did not feel it was helping, that he would discuss his medication with his treating physician, that Plaintiff had an extreme focus on his limitations and pain, and that he realized that being non-productive was contributing to his depression and anxiety. *Id.* Dr. Heitkemper also noted that given his extreme somatic focus, conviction of limitations, levels of depression which resulted in no motivation, poor concentration, anhedonia, and hopelessness along with his anxiety which resulted in panic attacks which Plaintiff found disabling, Plaintiff would find it very difficult to sustain any type of employment at the present time. *Id.* Dr. Heitkemper opined that was not able to perform most work-related mental activities. *Id.* Dr. Heitkemper also opined that Plaintiff had marked restrictions of activities of daily living, moderate difficulties maintaining social functioning, and marked deficiencies of concentration. *Id.*

The medical advisor (MA) testified at the hearing that Plaintiff was moderately limited in daily activities and social functioning and that he had moderate problems with concentration, persistence and pace. (Tr. 557-59). The MA also testified that there were indications in the record of medication misuse and overuse and that Plaintiff was chemically dependent on Xanax. (Tr. 547-68). The MA testified further that the only evidence of the frequency of anxiety attacks was what Plaintiff self-reported to his care providers, that although Plaintiff was diagnosed

9

with dysthymic disorder there was no indication of a major depressive disorder, and that she did not place much weight on the depression and anxiety inventory tests because they were simply questionnaires completed by the patient and primarily used as a screening tool. *Id.*

In his Statement of Errors, Plaintiff essentially alleges that the Commissioner erred by rejecting Drs. Stratton's and  Heitkemper's opinions.  (Doc. 9).

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir.  2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)).  In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502).  However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue.  *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986).  A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record.  *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear:  the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and*

*Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992).  Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians.  *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993).  A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability.  *Id.*  Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

Failure to consider the record as a whole undermines the Commissioner's conclusion. *Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 518 (6th Cir. 1985), *citing, Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1973).

> In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation.  It is more than merely "helpful" for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence.  It is absolutely essential for meaningful appellate review.

*Hurst,* 753 F.2d at 519 (citation omitted).  Even though an ALJ is not bound by a treating physician's opinion, he must set forth his reasons for rejecting the opinion.  *See Bowen v. Commissioner of Social Security,* 478 F.3d 742 (6th Cir. 2007); *see also, Shelman v. Heckler*, 821

11

F.2d 316, 321 (6th Cir. 1987).

First, the Commissioner acknowledges that he failed to articulate his consideration of Dr. Stratton's opinion as required by the Regulations and case law. (Doc. 11 at 17). In spite of that deficiency, the Commissioner urges the Court to nevertheless affirm his decision that Plaintiff is not disabled. However, the Court must decline the Commissioner's invitation to engage in the kind of fact-finding that affirming the Commissioner's decision, or indeed reversing it, would require. While the Commissioner may arguably have an adequate basis for rejecting treating physician Dr. Stratton's opinion, the Commissioner's failure to articulate those reasons require the Court to remand this matter. As noted above, the Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision; it is not to engage in fact-finding.

The Court reaches a similar conclusion with respect to Dr. Heitkemper's opinion. Indeed, the Commissioner also recognizes his failure to articulate his reasons for rejecting Dr. Heitkemper's opinion. (Doc. 11 at 19). And, once again, the Commissioner's position is that the Court should nevertheless affirm his decision that Plaintiff is not disabled. However, the Court must again decline the Commissioner's invitation to engage in fact-finding. Therefore, as with Dr. Stratton's opinion, while the Commissioner may arguably have an adequate basis for rejecting Dr. Heitkemper's opinion, the Commissioner's failure to articulate those reasons require the Court to remand this matter.

The Commissioner's failures in this regard simply prohibit the Court from engaging in meaningful judicial review. Accordingly, this Court concludes that the Commissioner's decision that Plaintiff is not disabled is not supported by substantial evidence on the record as a whole and

12

should be reversed.

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

The fourth sentence of 42 U.S.C. Sec. 405(g) directs the entry of a final appealable judgment even though that judgment may be accompanied by a remand order. *Sullivan v. Finkelstein,* 496 U.S. 617 (1990). The fourth sentence does not require the district court to choose between entering final judgment and remanding; to the contrary, it specifically provides that a district court may enter judgment "with or without remanding the cause for rehearing." *Id.*

This Court finds that not all of the factual issues have been resolved and the record does not adequately establish that Plaintiff is entitled to benefits. Specifically, as noted above, the Commissioner may arguably have bases for rejecting Drs. Stratton's and Heitkemper's opinions. Therefore, this matter should be remanded for further administrative proceedings necessary for a determination of whether Plaintiff is disabled under the Act.

It is therefore recommended that judgment be entered in favor of Plaintiff and against the Commissioner reversing the Commissioner's decision that Plaintiff is not disabled. It is also

13

recommended that this matter be remanded for further administrative proceedings.

September 15, 2008.

*s/ Michael R. Merz*
Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).